**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LAURA ROULE,**

      **Plaintiff,**

v.                                                            **Case No. 8:08-cv-750-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
                                        /

## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-two years of age at the time of her administrative hearing in July 2007. She stands 5', 4" tall and weighed 198 pounds, down from approximately 298 pounds. Plaintiff dropped out of school in ninth grade and subsequently obtained a GED. Her past relevant work was as a telemarketer, telemarketing supervisor, truck driver, waitress, and security officer. Plaintiff applied for disability benefits and Supplemental Security Income payments in September 2004, alleging disability as of May 28, 2004, by reason of diabetes, a lupus-type condition, hypothyroid, asthma, edema, high blood pressure, and an enlarged

heart, all of which resulted in an inability to walk; an inability to put pressure on the knees, ankles, wrists, shoulders, elbows, and fingers; sleepiness from pain medication; an inability to concentrate; and blurred vision.[1] The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an ALJ. The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified that she has been unable to work since May 2004, primarily due to complications from diabetes. By her account, she has difficulty keeping her blood sugar levels under control. She takes insulin three times a day. When her blood sugar is high, she experiences extreme thirst, frequent urination, blurred vision, agitation, and neuropathy. Regarding urination, Plaintiff testified that she has to use the restroom frequently, about every thirty minutes or so. She used to take a diuretic, which increased the frequency of her need to urinate. She said she complained to her doctor about it and stopped

---

[1]Plaintiff also filed applications for disability benefits and Supplemental Security Income payments in January 2002, alleging an onset of disability of January 29, 2002. Those applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"). The hearing was conducted in June 2003. (R. 299-322). In a decision dated May 27, 2004, the ALJ denied Plaintiff's claims. (R. 16-23). Plaintiff sought review of the ALJ's decision, and the Appeals Council denied her request for review in August 2004. (R. 5-8). Thereafter, Plaintiff sought review in this court. By Order dated March 2, 2006, the court affirmed the Commissioner's decision. *See* (Doc. 26) in Case No. 8:04-cv-2146-T-MAP. No further appeals were taken. Those proceedings are not pertinent to the instant cause aside from the documents therein being included in the administrative transcript and explaining Plaintiff's alleged onset date of disability of May 28, 2004, i.e., one day after the prior unfavorable decision was issued. Reopening is not at issue in this case.

taking the diuretic about a year before the hearing.  She stated she had also been taking a medication to help control her bladder, but it did not help.  As for her vision, Plaintiff testified that glasses do not help and she can no longer see well enough to read even when her blood sugar is normal.  Regarding the agitation, Plaintiff indicated that she has verbally attacked people and does not remember doing it.  As for neuropathy, Plaintiff testified that she has numbness and tingling in her hands and feet and sharp pains going down into her feet.

Plaintiff testified that she also suffers from obesity (weighing approximately 298 in 2004 and 198 pounds at the time of the hearing, a weight loss she attributes, in part, to diabetes), a pinched nerve in her neck, arthritis in her low back, a spur in her hip, fibromyalgia in both knees, tennis elbow in her right elbow, and a pinched nerve in her left elbow.  Additionally, she has asthma, which is triggered by pollen and causes difficulty breathing.

By Plaintiff's account, she has good days and bad days.  On good days, she has only mild pain when she wakes up and does not have to take medication.  She can use the restroom without worrying about falling, walk through the house, and go to the grocery store.  However, after going to the grocery store, she ends up in bed after about two hours because she pushes herself and ends up injuring herself.  On bad days, Plaintiff said she is not able to get out of bed at all except to use the bathroom.  She estimated that she has about twenty bad days per month.

Plaintiff described limited physical abilities.  By her account, she can stand for about fifteen minutes at a time without having to sit down.  She can sit for about thirty to forty-five minutes without having to stand up and walk around.  Even then, Plaintiff testified that it is

hard getting up and down due to her knees and hip. She stated that she has severe pain when she gets up or down or if she climbs stairs due to the pain in her knees. Plaintiff said that she could sit and stand for about two hours if she alternated between sitting and standing, but would then have to lie down. The length of time she would have to lie down depends on whether she has taken her pain medication. If she did, she would sleep for about four hours. With regards to walking, Plaintiff indicated she could walk about one hundred feet on level ground before her back would start hurting. As for her ability to lift, Plaintiff stated she could lift and carry about ten pounds. She indicated that she might be able to lift twenty pounds once a day but could not lift that much on a frequent basis.

Plaintiff is separated from her husband and lives in a house with her two teenage children. Her fourteen-year-old daughter is blind and receives monthly SSI payments; the family lives off of that income. She does not receive financial support from her husband. Plaintiff stated her fifteen-year-old daughter helps out a lot and occasionally she gets help from her sister. Plaintiff drives once or twice a week to the store or doctor's appointments. She borrows a friend's car because she does not have one.

Plaintiff last worked in January 2002 as a telemarketing supervisor. She stopped working at that job because she had a conflict with her supervisor. By Plaintiff's account, her boss would not allow her to use the restroom, drink, or snack when needed, all of which she needed to do because of her diabetes. Prior to that work, Plaintiff worked as a telephone representative, a truck driver, a waitress, and a security guard. When asked whether she could work as a telemarketer if she could use the restroom when needed, have water and snacks as needed, and sit and stand at will, Plaintiff said she could not do that on a full-time basis

because she gets extremely tired when her blood sugar fluctuates and she is not permitted to drive when she takes her medications. *See* Plaintiff's testimony (R. 698-715).

Next, the ALJ took testimony from Mitchell Schmidt, a Vocational Expert ("VE"). The VE testified only to the classification of Plaintiff's prior work. According to the VE, Plaintiff's past work as a telemarketer, telemarketing supervisor, security officer, and waitress were all light exertional jobs and her past work as a truck driver was a medium exertional job. *See* VE's testimony (R. 714-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of August 13, 2007, the ALJ determined that while Plaintiff has severe impairments related to insulin-dependent diabetes mellitus, obesity, and degenerative disc disease, she nonetheless had the residual functional capacity to perform light exertional work. Upon this finding, the ALJ concluded that Plaintiff retained the functional capacity to perform her past relevant work as a security officer. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 334-39). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

6

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred by failing to give appropriate weight to the opinion of Plaintiff's treating physician and did not comply with SSA rulings and 96-2p and 96-5p; and

(2) The ALJ did not properly evaluate the Plaintiff's complaints of non-exertional symptoms.

By her first claim, Plaintiff argues that the ALJ failed to provide adequate reasons for discounting the residual functional capacity opinion of her treating physician, Dr. William Werden, as required by Social Security Ruling (SSR) 96-2p. According to Plaintiff, the ALJ provided only a boiler-plate and conclusory rationale for discounting the doctor's opinion. In support of her contention, Plaintiff points to physical findings on four examinations which she asserts contradict the ALJ's finding that most of the physical examinations were unremarkable. Because the ALJ did not accord appropriate weight to Dr. Werden's opinion,

Plaintiff urges that the doctor's opinion should be accepted as true as a matter of law. At a minimum, Plaintiff urges that a remand for further consideration is warranted because the ALJ should have re-contacted Dr. Werden for clarification of his opinion pursuant to the directive set forth in SSR 96-5p. (Doc. 31 at 5-8).

The Commissioner counters that the ALJ stated adequate cause for rejecting Dr. Werden's opinion, namely, the doctor's own treatment records, the findings on a consultative examination performed by Dr. Bhupendra Gupta in January 2005, and the opinion of Dr. Ronald Kline, a non-examining, reviewing physician, and those reasons are supported by substantial evidence. The Commissioner also contends that the ALJ was not obligated to re-contact Dr. Werden because the doctor's records were not inadequate for consideration. (Doc. 32 at 5-10).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the

treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, at 1053.

At issue here is Dr. Werden's opinion as expressed in a form captioned "Diabetes Mellitus Residual Functional Capacity Questionnaire" and dated July 28, 2005. By this form, the doctor opined that Plaintiff would frequently experience symptoms severe enough to interfere with attention and concentration; was severely limited in her ability to deal with work stress; could stand/walk less than two hours total in an eight-hour day; could sit for at least six hours in an eight-hour day; had to be able to walk around every thirty minutes for ten minutes at a time; needed to be able to shift positions at will from sitting, standing, or walking; needed to take unscheduled breaks every thirty to sixty minutes for ten to fifteen minutes at a time; had to be able to elevate her legs to waist level during periods of prolonged sitting (75% of the day if performing sedentary work); had to occasionally use a cane while engaging in occasional walking/standing; could occasionally lift less than ten pounds and never lift twenty pounds or more; had significant limitations in doing repetitive reaching, handling, or fingering; could never bend and twist at the waist; had to avoid all exposure to extreme heat, cold, humidity, soldering fluxes, solvents/cleaners, and chemicals; had to avoid even moderate exposure to fumes, odors, dusts, gases, perfumes, and cigarette smoke; and would, on the average, miss work more than three times a month as a result of her

9

impairments.² (R. 621-25). Citing to SSR 96-2p, the ALJ found that Dr. Werden's opinion was not entitled to controlling weight because:

> it is not consistent with or supported by the medical evidence, including Dr. Werden's own physical examination findings. The latter physician has treated the claimant since August 2003, but the physical findings do not support the degree of severity that is reflected in the functional capacity of July 2005. Indeed, most of the physical examinations have been unremarkable, with normal gait, no neurological deficits, and the absence of joint swelling or respiratory distress.

(R. 338). As indicated above, Plaintiff contends that these finding are insufficient.

Upon consideration, I am obliged to conclude that the ALJ stated adequate good cause to discount Dr. Werden's opinion on Plaintiff's functional capacity. As the Commissioner notes, Dr. Werden's own treatment notes do not support the severe functional limitations set forth in the questionnaire. While Dr. Werden treated Plaintiff from August 2003 through April 2007, his treatment notes are somewhat sparse. Objective findings included decreased range of motion in the legs, right shoulder pain on palpitation, positive paraspinal tenderness on palpitation, leg pain with light palpitation, decreased range of

---

²The record also contains a form captioned "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," which is dated June 18, 2004, and completed by Dr. Werden. By this assessment, the doctor opined that Plaintiff could frequently lift and/or carry ten pounds; could stand and/or walk less than two hours in an eight-hour day; must periodically alternate sitting and standing to relieve pain or discomfort; had limited pushing/pulling ability in her arms due to weakness; never could perform postural activities; could frequently reach and occasionally perform activities involving handling, fingering, and feeling; had hearing loss in both ears but no limitations seeing; and could have only limited exposure to temperature extremes, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals and gases. (R. 295-99). This form was apparently submitted to the Appeals Council on Plaintiff's first application.

motion on flexion, and decreased range of motion in the cervical spine, and bilateral lower extremity edema. (R. 481, 485, 491, 495, 638, 639). Many of his examinations, however, did not include any of those observations, particularly the latter ones. *See, e.g.,* (R. 632-37, 666-69). Objective testing during this period was also somewhat benign. Radiology of the hip/knees in March 2006 was unremarkable (R. 650), views of the lumbar spine in March 2004 revealed only minor degenerative changes (R. 510), and views of the cervical spine in March 2007 revealed a reversal of the cervical lordosis, moderate degenerative changes with spurring, and disc space narrowing at C5-C6 and C6-C7 (R. 676).

As noted by the ALJ, physical examinations by other practitioners often revealed no significant findings. On consultative examination in January 2005, Dr. Gupta noted that Plaintiff's joints showed no signs of tenderness, swelling, erythema, heat, crepitus, or deformity aside from some evidence of joint tenderness and swelling in Plaintiff's hands, feet, and elbows. (R. 522-23). Sensory findings, reflexes, and motor strength were normal; there was no tenderness or palpable muscle spasm in the cervical spine; there was tenderness and palpable muscle spasm on examination of the lumbar spine, but straight leg raising test was normal; there was no evidence of neuropathy; grip strength and fine manipulation were fine; and Plaintiff sat, stood, and walked with ease. (R. 523-25). Dr. Gupta noted that Plaintiff had exaggerated pain behavior. (R. 525). Dr. Vipul Joshi, a rheumatologist, examined Plaintiff on five occasions in 2004 and 2005. While he repeatedly noted decreased range of motion in Plaintiff's shoulder, hips, knees, and elbows, muscle tone was normal. (R. 541-51). Similarly, Dr. Michael C. Burnette, another rheumatologist who examined Plaintiff on multiple occasions from August 2005 through March 2007, reported only minimal findings.

11

(R. 645-52, 658-59). Of note, none of these treating or examining doctors noted any physical limitations or recommended more than conservative treatment. Aside from Dr. Werden's opinion, the residual functional capacity assessments of record were provided by two non-examining, reviewing doctors who found Plaintiff capable of performing light exertional work.

In light of the medical record, including Dr. Werden's own notes, I am unable to conclude that the ALJ did not state adequate cause for rejecting the severe functional limitations found by Dr. Werden. Furthermore, Plaintiff's citation of the Social Security Rulings does not save her claim.[3] While the ALJ could have expounded on his rationale for not according considerable weight to Dr. Werden's opinion, for the reasons stated above I am unable to conclude that the rationale he provided violates the directives in SSR 96-2p.[4] Likewise, I do not find a violation of the directives of SSR 96-5p, which require the ALJ to make "every reasonable effort" to re-contact a treating doctor for clarification of an opinion if the evidence does not support the doctor's opinion on any issue reserved to the Commissioner (i.e., residual functional capacity) and the ALJ cannot ascertain the basis of the opinion from the case record.[5] SSR 96-5p, 1996 WL 374183, at *6 (S.S.A.). Upon my own review of the

---

[3]The Social Security Administration's rulings are not binding on this court, however, they are accorded deference. *See Fair v. Shalala*, 37 F.3d 1466, 1469 (11th Cir. 1994); *B.B. ex. rel. A. L. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).

[4]The stated purpose of SSR 96-2p is "to explain terms used in our regulations on evaluating medical opinions concerning when treating source medical opinions are entitled to controlling weight, and to clarify how the policy is applied." SSR 96-2p, 1996 WL 374188, *1 (S.S.A.).

[5]The regulations contain a similar directive. Pursuant to 20 C.F.R. § 404.1512(e), 416.912(e), an ALJ is directed to re-contact a medical source where the evidence received

record, I do not find that additional information or clarification was required. The record before the ALJ was complete and contained treatment records from Dr. Werden. These records, as well as medical records from other sources, do not appear to be inadequate, i.e., the information therein was sufficient to determine disability, and Plaintiff has not alleged otherwise. In these circumstances, the ALJ did not need assistance to "ascertain the basis of the opinion." Rather, the ALJ simply disagreed with Dr. Werden's opinion based on the treatment and examination notes that existed during the pertinent time. As such, the ALJ was not duty bound to re-contact Dr. Werden, and no error was committed requiring a remand on this ground. *See Couch v. Astrue*, No. 07-13036, 2008 WL 540178, at *2 (11th Cir. 2008) (unpublished)[6] (holding ALJ did not have duty to re-contact treating physician because substantial evidence supported his determination that plaintiff was not disabled, he had all of the treating doctor's records, and the information therein was adequate to enable the ALJ to determine plaintiff was not disabled).

By her second claim, Plaintiff argues that the ALJ erred by not explaining why he rejected her complaints of blurred vision and frequent urination. In support, Plaintiff notes that these complaints are reasonably related to her poorly controlled diabetes and would significantly impair her ability to perform work-related activities. In light of this error, Plaintiff urges that her case should be reversed and remanded with instructions to the ALJ to

---

from the source is inadequate. Of note, Plaintiff fails to allege that the evidence before the ALJ was inadequate; I do not find to the contrary.

[6]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

accept as true her testimony regarding blurry vision and the need to frequently use the restroom. (Doc. 31 at 8-9).

The Commissioner counters that the ALJ properly determined that Plaintiff's subjective complaints were not credible. According to the Commissioner, the ALJ noted Plaintiff's testimony regarding blurred vision and considered medical records from Dr. John Bell, which addressed Plaintiff's vision. As for Plaintiff's complaints of frequent urination, the Commissioner notes that no medical records after Plaintiff's alleged onset date support allegations of urological difficulties. Given the medical record, the Commissioner contends the ALJ's credibility finding was sufficient. (Doc. 32 at 10-13).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 .2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the

reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). However, a reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Upon consideration of the decision and record, I again conclude that there is no reversible error as claimed.[7] Contrary to Plaintiff's urging, the decision reveals that the ALJ addressed Plaintiff's complaints of blurred vision and discounted the same given the records from her opthamologist. (R. 337). As for her complaints of urinary frequency, Plaintiff correctly notes that the ALJ did not specifically recount her testimony about needing to use the restroom every thirty minutes or provide reasons for discounting it. Nonetheless, I am unable to conclude that his failure to do so results in reversible error given that the complaint pertains to Plaintiff's diabetes, which the ALJ fairly considered, and the lack of record support for the allegation.

Additionally, the substantial evidence supports the ALJ's rejection of these complaints. For example, Dr. John T. Bell (an opthamologist) reported in September 2004 that there was no evidence of diabetic retinopathy or maculopathy; Plaintiff's visual acuity was 20/20 in each eye; and the examination essentially was normal. (R. 444). No complaints

---

[7]Here, the ALJ clearly was aware of the appropriate standard as he cited to and applied the standard as set forth in the applicable regulations and rulings (R. 336). *See Wilson,* 284 F.3d at 1226. Thus, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (R. 337).

15

of blurred vision were noted.[8] Dr. Andrew D. Henry, a treating primary physician, examined Plaintiff approximately fourteen times between July 2003 and April 2005. The doctor's treatment notes reveal complaints of blurred vision on two occasions in mid-April 2004, prior to Plaintiff's alleged onset date of disability, and on two occasions thereafter in early 2005. (R. 464-65, 568-69). During an initial consultation with Dr. Joshi in August 2004, Plaintiff reported a loss of bladder control and blurred and double vision, which felt as if something was in her eye. (R. 549). Neither were mentioned on four subsequent visits. Likewise, while Plaintiff reported blurred vision, as well as "bladder loss," in a new patient questionnaire in August 2003 (prior to her alleged onset date), no similar reports were made to Dr. Werden over the course of almost four years of treatment with him. Indeed, Dr. Werden repeatedly noted on examination forms that Plaintiff's eyes were normal. (R. 481, 485, 487, 489, 491, 493, 495, 497, 501). On consultative examination in January 2005, a limited eye examination was normal and no complaints of blurred vision or frequent urination were noted. (R. 521-25). Similarly, during a diabetes consultation with Dr. Monther Halawani in September 2005, it was noted that Plaintiff had no increased urinary frequency, urgency, or hematuria. (R. 630). Additionally, no blurred vision complaints were noted, but Plaintiff did report some visual changes. Although Plaintiff reported worsening vision and visual distortion during an

---

[8]On examination in March 2003, Dr. Bell documented a complaint of blurred vision for a couple of weeks. (R. 449). In February 2002, Dr. Bell reported that Plaintiff was examined for complaints of "a dark cloud passing over vision, sometimes in both eyes," which she said happens almost everyday. (R. 451). It was Dr. Bell's opinion that Plaintiff was having "a classic migraine with visual disturbances," and there was no diabetic retinopathy. *Id.* Examination again was essentially normal. *Id.*

eye examination in October 2006, blurred vision in particular was not noted.[9] (R. 656). Given the record support for the ALJ's decision to discount Plaintiff's complaints of blurred vision and urinary frequency, a remand simply is not warranted.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 28th day of August 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[9]This record is difficult to read and its import difficult to ascertain.